IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

ANTONIO BONDS,            )
                          )
     v.                   )     NO: 1:16-0085
                          )
CHERRY LINDAMOOD, et al.  )

TO:     Honorable Waverly D. Crenshaw, Jr., Chief District Judge

# REPORT AND RECOMMENDATION

By Order entered December 6, 2016 (Docket Entry No. 8), this *pro se* prisoner civil rights action was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1)(A) and (B), Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Pending before the Court are a motion to dismiss filed by Defendant Robert Turman (Docket Entry No. 88) and a motion for summary judgment filed by Defendants Cherry Lindamood, Brandon Bowers, Rhonda Staggs, Doreen Trafton, Brenda Pevahouse, Eric Bryant, Sean Brantley, Robert Wesson, Hank Inman, Christopher Martinez, and Jesse James (Docket Entry No. 91). Plaintiff has responded in opposition to both motions. For the reasons set out below, the undersigned Magistrate Judge respectfully recommends that the motions be granted and this action be dismissed.

## I. BACKGROUND

Antonio Bonds ("Plaintiff") is an inmate of the Tennessee Department of Correction ("TDOC") currently confined at the Northwest Correctional Complex in Tiptonville, Tennessee. He

filed this lawsuit *pro se* and *in forma pauperis* on October 13, 2016, against several prison officials seeking relief under 42 U.S.C. § 1983 against them in their individual and official capacities. Plaintiff alleges that his constitutional rights were violated during his prior confinement at the South Central Correctional Facility ("SCCF") in Clifton, Tennessee. Specifically, his lawsuit centers around events that occurred over the span of approximately seven days in May 2016 when he was held in administrative segregation at the SCCF.

On the afternoon of Tuesday, May 10, 2016, Plaintiff was placed in administrative segregation pending investigation based on a report issued that day by Hank Inman ("Inman"), the SCCF Security Threat Group Coordinator. Inman suspected Plaintiff of being involved in security threat group activity. In accordance with TDOC policy, Plaintiff was held in segregation for seven days until the evening of Tuesday, May 17, 2016, when he was released back to the general population. Although Plaintiff was released from administrative segregation, he was charged by Inman with the disciplinary offense of participation in security threat group activity. However, the charge was dismissed prior to a disciplinary hearing.

Plaintiff alleges that his constitutional rights were violated in several ways during his stay in administrative segregation. First, he asserts that the living conditions were so bad that they amounted to cruel and unusual punishment in violation of the Eighth Amendment. *See* Complaint (Docket Entry No. 1), at 8-9, ¶ D. He alleges that his cell had no emergency call button, was filthy and reeked of the smell of urine and body wastes from the prior occupants, and that the toilet in the cell had a ring of feces in it. *Id*. He asserts that he had difficulty obtaining toilet tissue, that it took five days for him to obtain cleaning supplies, and that he did not have his bed linens, shower shoes, reading materials, religious items, blood pressure medications, and legal papers for two days because

2

of delays in obtaining personal property from his prior housing unit.[1] *Id*. at 8-9, ¶¶ D and G.  He further contends that a policy directive from Assistant Warden Eric Bryant ("Bryant") requires that the shoes of inmates entering administrative segregation be confiscated, forcing him to walk around in his socks for two days until his shower shoes were given to him.  *Id*. at 9, ¶ C.  He asserts that he was not permitted to take a shower or have outside recreation during his seven day stay in administrative segregation and that the lights in the segregation pods are on 24 hours a day.  *Id*. at ¶ J.  Plaintiff implicates TDOC official Robert Turman ("Turman") and SCCF officers Doreen Trafton ("Trafton"), Ronda Staggs ("Staggs"), Brandon Bowers ("Bowers"), Jessie James ("James"), Christopher Martinez ("Martinez"), David Moore ("Moore"), Robert Wesson ("Wesson"), and Sean Brantly ("Brantley) in these events.  Plaintiff further alleges that he was not placed in a cell that had a toilet when he initially entered the administrative segregation unit and that he had to urinate in a cup in the cell and on the cell floor because Moore, Wesson, and Martinez ignored his request to use the restroom.  *Id*. at 9, ¶ I.

Plaintiff also alleges that his First Amendment and Due Process rights were violated.  He asserts that he is a Muslim and that his right to practice his religion was infringed upon because, despite his complaints to Trafton and Brantley, he had to wait two days to receive his Qur'an after he was transferred to administrative segregation.  *Id*. at 9, ¶ F.  Plaintiff asserts that he was denied due process by Inman and SCCF Disciplinary Board Chairperson Brenda Pevahouse ("Pevahouse") because his placement in administrative segregation at the direction of Inman was undeserved and because his request for a disciplinary hearing was not granted by Pevahouse.  *Id*. at 9, ¶¶ A and B.

---

[1] By "bed linens," Plaintiff apparently means his personal bed sheets.  His own allegations are that he was offered a mattress, pillow, and blanket approximately 12 hours after entering administrative segregation.  *See* Complaint at 12, ¶¶ 24-27.

3

Plaintiff alleges that his right to be free from retaliation was violated by Trafton and Bowers because Trafton ignored his requests for a grievance form and Bowers cursed at him and threatened to not feed him lunch if he continued to ask Bowers about the whereabouts of a grievance form. *Id*. at 9, ¶ E. Finally, Plaintiff alleges that he wrote to Warden Cherry Lindamood ("Lindamood") about his placement in administrative segregation and about the conditions in the unit but that she failed to respond to his letter. *Id*. at 6, ¶ 1.

After the Court's initial review of the lawsuit pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A,[2] Defendants Turman and Defendants Lindamood, Bowers, Staggs, Trafton, Pevahouse, Bryant, Brantley, Wesson, Inman, Martinez, and James ("SCCF Defendants") were served with process[3] and pretrial proceedings have occurred pursuant to a scheduling order. *See* Docket Entry No. 48. In addition to the two pending dispositive motions filed by Defendants, Plaintiff has filed a motion to amend his complaint, seeking to add additional claims and add defendants in place of "John Doe" defendants that were named in his original complaint. *See* Docket Entry No. 94. The merits of the motion to amend are addressed in this Report and Recommendation.

---

[2] Upon initial review, the Court dismissed Plaintiff's claims against TDOC, Derrick Schofield, Corrections Corporation of America, Inc., and Damon Hininger. *See* Order entered December 6, 2016 (Docket Entry No. 8). Although the Court also initially dismissed the retaliation claim against Defendant Bowers, this claim was subsequently reinstated by the Court against Bowers and Trafton. *See* Order entered January 4, 2017 (Docket Entry No. 15).

[3] Process was returned unexecuted for Moore with the notation that there was no current or former employee by the name of "David Moore" at SCCF. *See* Docket Entry No. 29. By Order entered February 1, 2017 (Docket Entry No. 41), Plaintiff was advised of the lack of service on Moore, but Plaintiff has not sought to reserve Moore at an alternative address.

## II. DEFENDANT TURMAN'S MOTION TO DISMISS

Defendant Turman seeks dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Plaintiff's allegations are not sufficient to state a claim under 42 U.S.C. § 1983 upon which relief can be granted against him. Specifically, Turman argues that the only factual allegations Plaintiff makes against him is that Plaintiff made a verbal complaint to Turman, who is the TDOC liason at the SCCF, on the morning of May 17, 2016, about Defendant Bowers not providing showers to inmates in administrative segregation and that Turman stated "you are to get showers Monday, Wednesday, and Friday." *See* Complaint at 16 and 17, ¶¶ 62-64. Turman argues that these allegations do not show that Turman had any role in denying Plaintiff showers or that Turman took or failed to take any action regarding Plaintiff that would support a claim of liability against Turman for denying Plaintiff's constitutional rights. Plaintiff responds by asserting that Defendant Turman was made aware of the lack of shower issue and yet took no action to ensure that Plaintiff was provided with a shower. *See* Plaintiff's Response (Docket Entry No. 96). Plaintiff argues that these facts are sufficient to show that Turman disregarded an excessive risk to Plaintiff's health because of the lack of showers and took part, implicitly authorized, and knowingly acquiesced in the conduct of Bowers. *Id*. at 2, ¶ 3.

Defendant Turman's motion to dismiss should be granted. Personal liability under Section 1983 must be based upon facts showing that a defendant had some actual role in causing the constitutional violation at issue. *See Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). Plaintiff must establish a "causal connection between the misconduct complained of and the official sued." *Dunn v. State of Tennessee*, 697 F.2d 121, 128 (6th Cir. 1982). There are no allegations that Turman was involved in deciding whether Plaintiff was given a shower during the seven days that

5

Case 1:16-cv-00085   Document 119   Filed 01/16/18   Page 5 of 18 PageID #: 923

he was in administrative segregation. Further, Plaintiff's complaint to Turman, on the last day that Plaintiff was held in administrative segregation, about not receiving showers during the prior week and the fact that Turman did not take steps to immediately ensure that Plaintiff received a shower is simply an insufficient basis to show active participation in or authorization of the conduct of the officers who actually managed the segregation unit. Mere allegations that a supervisory official failed to intervene upon receiving an inmate's complaint are generally not sufficient to support a constitutional claim. *See Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).

Even when the Court accepts as true the allegations made against Turman and construes Plaintiff's complaint liberally in favor of the *pro se* Plaintiff, as is required for review of the Rule 12(b)(6) motion, s*ee Kottmyer v. Maas*, 436 F.3d 684 (6th Cir. 2006); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999); *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11-12 (6th Cir. 1987), Plaintiff's Complaint fails to set out factual allegations that would support a claim of individual liability against Turman under Section 1983. Given the lack of a plausible claim against Turman, his dismissal under Rule 12(b)(6) is warranted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

### III. MOTION FOR SUMMARY JUDGMENT

The SCCF Defendants seek summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Defendants first contend that Plaintiff properly exhausted his administrative remedies only as to his claims against Defendants Brantley, Martinez, and Trafton, and that all other claims

should be dismissed for failure to exhaust as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Defendants then argue that the undisputed evidence and the prevailing law show that Plaintiff's constitutional rights were not violated as alleged and that Defendants are entitled to summary judgment on the merits of Plaintiff's claims. *See* Defendants' Memorandum of Law (Docket Entry No. 92). In support of their motion, Defendants rely upon a Statement of Undisputed Material Facts (Docket Entry No. 93), their own declarations (Docket Entry Nos. 93-1 to 93-11), the declaration of Leigh Staggs, the current SCCF Grievance Chairperson (Docket Entry No. 92-12), and Plaintiff's Responses to Defendants' written discovery requests (Docket Entry No. 93-13).

In response, Plaintiff contends that he should not be found to have failed to exhaust administrative remedies for some of his claims because, at the very least, genuine issues of material fact exist as to whether he had administrative remedies actually available to him. He contends that the alleged retaliatory actions of Bowers and Trafton hindered his ability to pursue grievances while he was held in administrative segregation and that TDOC's grievance policy further rendered many of his complaints non-grievable and subjected him to being charged with abuse of the grievance process if he attempted to pursue his complaints through additional grievances. Plaintiff further contends that his allegations are supported by evidence and that he has shown that his constitutional rights were violated by Defendants' conduct. In support of his response, Plaintiff has filed: 1) a response to Defendants' Statement of undisputed Facts (Docket Entry No. 104); 2) his own affidavit (Docket Entry No. 105 at 1-16); 3) the affidavits of seven other inmates who were held in administrative segregation at various times during 2016 (Docket Entry No. 105 at 17-24); and

7

Case 1:16-cv-00085   Document 119   Filed 01/16/18   Page 7 of 18 PageID #: 925

4) copies of various prison records, documents, and other exhibits related to his allegations (Docket Entry No. 106).

Also before the Court is the SCCF Defendants' reply (Docket Entry No. 114) and Plaintiff's sur-reply (Docket Entry No. 117).

After review of both parties' filings and the entire record in this action, the Court finds that summary judgment should be granted to the SCCF Defendants on each of the claims brought by Plaintiff. Although Plaintiff's allegations were sufficient to permit the claims to survive initial review under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the evidence before the Court, even when viewed in the light most favorable to Plaintiff,[4] is not sufficient to permit a reasonable jury to conclude that Plaintiff suffered a violation of his constitutionally protected rights. None of the arguments made by Plaintiff in support of his claims are persuasive, and any factual disputes that exist do not rise to the level of genuine issues of material fact that require resolution at trial. Because the Court finds that summary judgment is warranted in favor of Defendants on the merits of Plaintiff's claims, it is not necessary for the Court to address Defendants' alternative argument for dismissal based on exhaustion under the PLRA.

With respect to Plaintiff's Eighth Amendment claim, several factors support the grant of summary judgment to Defendants. First, the conditions about which Plaintiff complains were not objectively severe enough to rise to the level of violating the Eighth Amendment. A claim premised upon allegations that a prison inmate's living conditions violate the Eighth Amendment's prohibition against cruel and unusual punishment must be supported by a showing of severe conditions of

---

[4] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir.), *cert. denied*, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001)

confinement which deprived the inmate of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981). This high threshold requires evidence of grave and extreme deprivations. *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Rhodes*, *supra*; *Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004). While the Court does not discredit Plaintiff's allegations, the conditions at issue – dirty and foul smelling cells, unclean toilets, brief delays in obtaining cleaning supplies and personal property, a lack of shoes for a few days, an absence of showers and outside recreation for no more than a week while in segregated confinement, and constant hallway lighting[5] – simply do not rise to the level of grave and extreme deprivations given the facts of this case. *See Powell v. Washington*, 2017 WL 6422354 at *4 (6th Cir. Dec. 18, 2017); *Richmond v. Settles*, 450 Fed.App'x 448, 455 (6th Cir. 2011). Plaintiff complains about conditions that were harsh and unpleasant; to that fact, the Court is not unsympathetic. However, an individual's exposure to harsh and unpleasant living conditions while in prison does not violate the Eighth Amendment. *Rhodes*, 452 U.S. at 347; *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).

Second, Plaintiff was held in administrative segregation for only seven days, and any exposure he had to objectionable conditions was brief and temporary. Conditions of confinement that are temporary in nature rarely rise to a level that implicates constitutional concern. *Dellis v. Corrections Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). *See Hutto v. Finney*, 437 U.S. 678, 686-87, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978) ("A filthy, overcrowded cell ... might be tolerable for

---

[5] The undisputed evidence shows that, although pod lights in the segregation unit were not shut off, Plaintiff was able to control the light that was located in his cell. *See* Plaintiff's Affidavit (Docket Entry No. 105) at ¶ 45 and Plaintiff's Response to Statement of Undisputed Facts (Docket Entry No. 104), at 15-16, ¶ 28.

9

a few days and intolerably cruel for weeks or months."). Third, there is no evidence before the Court that any of the living conditions complained about by Plaintiff caused an actual and substantial risk of serious damage to his health. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Helling v. McKinney*, 509 U.S. 25, 36, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). Plaintiff's assertion that he developed a rash on his back, suffered mental distress and "physical torture," as well as sleep deprivation, anxiety disorder, and depression, because of the complained-about conditions, *see* Complaint at 8, ¶ D and Plaintiff's Affidavit (Docket Entry No. 105) at ¶¶ 50 and 60, is somewhat hyperbolic and unsupported by any actual evidence. These assertions fail to show that an actual and substantial risk of serious damage to his health existed because of any conditions he experienced while held in administrative segregation.

Finally, for an individual defendant to be found liable of an Eighth Amendment violation, there must be evidence of a culpable state of mind on the part of the defendant. *See Farmer*, 511 U.S. at 834; *Comstock v. McCrary*, 273 F.3d 693, 702-03 (6th Cir. 2001). Many of the events complained about by Plaintiff occurred as a result of the routine and unremarkable process of prison management. For example, the confiscation of Plaintiff's shoes was due to a policy concerning what property inmates can possess while in administrative segregation; Plaintiff's inability to have access to cleaning supplies was due to a policy of supplying such supplies only on the weekend; the delay in providing personal property to Plaintiff was due to a time lag caused by the need to inventory property; and the hall lights remained on in the segregation unit for security purposes. It is a well-accepted principle that the management of prison facilities is best left to prison officials. *See Thornburgh v. Abbott*, 490 U.S. 401, 404-08, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Turner v. Safley*, 482

U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Bell v. Wolfish*, 441 U.S. 520, 546-47, 99 S.Ct. 1861, 99 S.Ct. 1861 (1979). Plaintiff's disagreement with the need for these policies fails to support constitutional claims against any of the Defendants.

To the extent that Plaintiff bases his Eighth Amendment claim upon the brief delays he encountered in obtaining his blood pressure medications,[6] he has not set forth facts supporting a conclusion that this delay violated his constitutional rights. A showing of deliberate indifference toward his serious medical needs is required to support an Eighth amendment lack of medical care claim. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). However, in the absence of other evidence, the few days that lapsed before Plaintiff received his medications are not sufficient to support a constitutional claim. *See Canady v. Wilkinson*, 90 Fed.App'x 863, 865 (6th Cir. 2004); *Dozier v. Pauley*, 24 Fed.App'x 398, 399 (6th Cir. 2001).

To the extent that Plaintiff bases his Eight Amendment claim upon his allegation that he was prevented from having access to a restroom and had to urinate in a cup and on the floor of a holding cell in which he was placed, this allegation, even if true, fails to support an Eighth Amendment claim. Assuming Plaintiff's allegations to be true, what happened was unfortunate and could have been avoided, but there is simply no evidence before the Court supporting a claim that the Plaintiff's constitutional rights were violated by this incident. *See LaPine v. Savoie*, 2017 WL 6764085, at *5 (6th Cir. Aug. 11, 2017) (inmate failed to state constitutional claim by his allegations that he was forced to urinate on himself and sit in soiled cloths for three hours because he was denied access to

---

[6] Plaintiff's own allegations are that he received one of his blood pressure medications within one day of entering administrative segregation and the other blood pressure medication within two days of entering administrative segregation. *See* Plaintiff's Response to Statement of Undisputed Facts at 4, ¶¶ 21-22.

a restroom); *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999); *Thompson v. Spurgeon*, 2014 WL 1846367 at *1 (M.D. Tenn. May 8, 2014) (Sharp, J.) (adopting Report and Recommendation) (plaintiff failed to rebut summary judgment motion despite allegations that he urinated on himself because he was denied access to a restroom); *Dominguez-Mendez v. McCoy*, 2011 WL 1430325 (E.D. Ky. Apr. 13, 2011) (inmate's allegation that he was not allowed to use restroom and was forced to defecate in his pants failed to state a constitutional claim).

Plaintiff's claims of other constitutional violations are as equally without merit. Even if the Court takes as true that Plaintiff did not have access to his Qur'an for two days, this event fails to evidence a constitutional violation. While incarcerated individuals do not lose their First Amendment right to exercise their religion because of their incarceration, *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348, 107 S.Ct.2400, 96 L.Ed.2d 282 (1987), "the circumstances of prison life may require some restriction on prisoners' exercise of their religious beliefs." *Walker v. Mintzes*, 771 F.2d 920, 929 (6th Cir. 1985). *See O'Lone*, 482 U.S. at 350-53. Plaintiff's allegation that he had to wait two days to receive his Qur'an is an allegation that simply fails to show an event that rises to the level of a constitutional infringement. In the absence of evidence showing that Plaintiff was totally denied religious opportunities or was subjected to intentional and arbitrary restrictions on his ability to practice his religious views, Plaintiff does not have a constitutional claim based merely upon this temporary and minor infringement upon his ability to worship while in administrative segregation. *Wiley v. Kentucky Dep't of Corr.*, 2012 WL 5878678 at *2 (E.D. Ky. Nov. 21, 2012) (temporary denial of Qur'an did not violate inmate's First Amendment rights).

There is likewise no merit in Plaintiff's complaint that Defendants Bowers and Trafton retaliated against him in violation of his First Amendment rights because of the way they treated him

when he sought to obtain grievance forms or information about a grievance that he had already filed. One of the showings necessary for a First Amendment retaliation claim is that an "adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage" in the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff's allegations of adverse action on the part of Defendant Bowers and Trafton fail to support a constitutional claim. Defendant Trafton is merely alleged to have ignored Plaintiff when Plaintiff requested a grievance form. *See* Plaintiff's Affidavit at ¶ 12 and Complaint at 16, ¶ 61. This simply does not constitute an adverse action. Defendant Bowers is alleged to have gotten angry, cursed at Plaintiff, and threatened to not serve him lunch. *See* Plaintiff's Affidavit at ¶ 58.[7] Even if true, these events are so minimal and inconsequential that no reasonable trier of fact could find that Plaintiff suffered a constitutionally significant adverse action because of filing a grievance. *See Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002) (explaining that "it would trivialize the First Amendment" to allow plaintiffs to bring First Amendment retaliation claims for any adverse action no matter how minor); *Thaddeus–X*, 175 F.3d at 398 ("certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations."). The First Amendment is not implicated merely because an incarcerated individual engages in a verbal altercation with prison officials, and petty insults or threats toward an incarcerated individual rarely amount to a constitutional tort. *See Owens v. Johnson*, 221 F.3d 1335 (6th Cir. 2000); *Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987).

---

[7] Plaintiff also alleges that Bowers withheld showers and recreation in retaliation for Plaintiff's grievance. This allegation fails to support the retaliation claim because it is conclusory. There is no evidence showing a causal connection between the alleged withholding of showers and recreation and Plaintiff's filing a grievance.

There is no evidence supporting a viable claim that Plaintiff's Due Process rights were violated. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on an incarcerated individual. *See Meachum v. Fano*, 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, an incarcerated individual is entitled to the protections of due process only when a prison sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87. *See also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer–Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). An incarcerated individual's short term placement in administrative segregation does not implicate a liberty interest because such segregation, by itself, does not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222–23, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005). Furthermore, even though TDOC policies may set forth procedural guidelines for both the imposition of administrative segregation and disciplinary proceedings, the protections provided by TDOC do not equate to constitutional protections and do not create a protected interest that implicates the Due Process clause. In the instant action, Plaintiff has not pointed to an impact on any protected interest which required that he be provided with any particular form of constitutionally mandated due process.

Similarly, to the extent that Plaintiff bases any of his constitutional claims upon prison officials' failure to follow their own internal policies, such an argument lacks merit. A constitutional

claim does not arise because a prison official failed to comply with prison policies. *See Black v. Parke*, 4 F.3d 442, 448 (6th Cir. 1993); *Barber v. City of Salem, Ohio*, 953 F.2d 232, 240 (6th Cir. 1992).

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon Cnty.*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). The Court has done so in this lawsuit and finds that the lack of evidentiary and legal support for Plaintiff's claims requires that summary judgment be granted in favor of all Defendants on all claims.

### IV. PLAINTIFF'S MOTION TO AMEND

Subsequent to Defendants' filing of their dispostive motions, Plaintiff filed a motion to amend his complaint. *See* Docket Entry No. 94. Plaintiff seeks three changes by his proposed amendment. First, he assert that he obtained through discovery the names of five prison officials, whom he contends are the individuals identified as "John and Jane Doe" defendants in his original complaint and whom he seeks to add as defendants to the conditions of confinement claims brought in this action. *Id*. at ¶¶ 1-7. Second, he seeks to clarify his First Amendment claims against Defendants Trafton and Bowers. *Id*. at ¶¶ 8-9. Third, he seeks to add Defendants Lindamood and Turman to his Due Process claim and assert a new claim of retaliation against Lindamood and Turman based on the allegation that he was transferred from the SCCF to a more restrictive facility

15

after Defendants were served with process in this lawsuit. *Id*. at ¶¶ 10-11. Defendants oppose the motion to amend. *See* Docket Entry No. 98.

Plaintiff no longer has the right to amend his complaint as a matter of course under Rule 15(a)(1) of the Federal Rules of Civil Procedure, and he has not obtained the opposing party's written consent for the proposed amendment. Accordingly, he must obtain leave of the Court to file an amendment to his complaint. *See* Rule 15(a)(2). Although Rule 15(a)(2) provides that leave to amend should be freely given "when justice so requires," leave to amend may be denied for an "apparent or declared reason." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). A motion to amend should be denied if the proposed amendments would be futile and would not withstand a motion to dismiss brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Foman*, *supra*; *Kottmyer v. Maas*, 436 F.3d 684, 692 (6th Cir. 2006); *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005); *Thiokol Corp. v. Department of Treasury*, 987 F.2d 376 (6th Cir. 1993); *Marx v. Centran Corp.*, 747 F.2d 1536, 1550 (6th Cir. 1984); *Development Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir. 1980).

Plaintiff's motion to amend should be denied as futile. First, the claims Plaintiff seeks to add against the newly identified defendants are essentially the same as the claims that the Court finds should be dismissed upon summary judgment in favor of SCCF Defendants for lack of evidentiary and legal support. Second, any claims against the newly identified defendants would appear to be time barred given that the proposed amendment was filed beyond the one year statute of limitations that is applicable to Plaintiff's claims, *see Hughes v. Vanderbilt Univ.,* 215 F.3d 543, 547 (6th Cir. 2000), and the substitution of an individual for a "John Doe" defendant does not relate back to the filing of the original complaint unless the plaintiff satisfies the "mistake concerning the party's

identity" requirement of Rule 15(c)(1)(C)(ii), which Plaintiff has not done in this case. *See* Cox *v. Treadway*, 75 F.3d 230, 240 (6th Cir. 1996). Third, adding clarifications or new claims against Defendants Bowers, Trafton, Lindamood, and Turman at this point in the proceedings and subsequent to these Defendants' filing of their motion for summary judgment is clearly prejudicial.

## RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Judge respectfully RECOMMENDS that:

1) the motion to dismiss of Defendant Robert Turman (Docket Entry No. 88) be GRANTED;

2) the motion for summary judgment of Defendants Cherry Lindamood, Brandon Bowers, Rhonda Staggs, Doreen Trafton, Brenda Pevahouse, Eric Bryant, Sean Brantley, Robert Wesson, Hank Inman, Christopher Martinez, and Jesse James (Docket Entry No. 91) be GRANTED;

3) Plaintiff's motion to amend (Docket Entry No. 94) be DENIED;

4) Defendant David Moore be DISMISSED pursuant to Rule 4(m) of the Federal Rules of Civil Procedure; and

5) this action be DISMISSED WITH PREJUDICE as to all claims and Defendants.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*,

474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

        Respectfully submitted,

        _____
        BARBARA D. HOLMES
        United States Magistrate Judge